**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WILLIAM SPIVEY, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>EVIG LLC, d/b/a BALANCE OF NATURE and DOUGLAS L. HOWARD,<br><br>     Defendants. | Civil Action No. 24-cv-781<br><br>District Judge: Hon. Marvin E. Aspen<br><br>Magistrate Judge: Hon. Gabriel A. Fuentes |

<u>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED
CLASS ACTION COMPLAINT**</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................... iv

I.       INTRODUCTION ........................................................................................... 1

II.      SUMMARY OF COMPLAINT ...................................................................... 1

         A.       Defendants' Marketing of Balance of Nature Is False, Deceptive, or
                  Misleading. ........................................................................................... 1

                  1.       Defendants' "Real Nutrition" Representation Is Misleading and
                           Deceptive. ................................................................................ 2

                  2.       Defendants' "Real Food" Representation Is Misleading and
                           Deceptive. ................................................................................ 4

                  3.       Defendants' "Real Science" Claim Is False and Misleading. ................ 5

                  4.       The Back of Label Misrepresentations Reinforce Those Made on the
                           Front of the Label. ................................................................... 5

         B.       Plaintiff Further Alleges that Defendants' Television Advertising Blitz,
                  Starting at Least as Early as March 1, 2021, Imparted the Same Over-
                  Arching Message as the Labeling. ........................................................ 6

III.     ARGUMENT ................................................................................................... 7

         A.       Defendants' Motion Improperly Raises Facts Outside the Complaint. ........... 7

         B.       Plaintiff's Claims Are Not Moot. ........................................................ 10

                  1.       *Chapman* Overrules *Damasco*. ............................................. 11

                  2.       *Fulton Dental*: Seventh Circuit Extends Holding of *Chapman*. .......... 12

                  3.       What Was Left Open by *Campbell-Ewald* Has Been Closed by the
                           Seventh Circuit. ...................................................................... 13

                  4.       Defendants Fail to Discuss Two Subsequent Seventh Circuit Decisions
                           That Further Lay to Rest Their Mootness Arguments, Yet They Cite
                           Cases That Were Either Expressly or Implicitly Overruled or
                           Distinguished By The Supreme Court in *Campbell-Ewald*. ................. 15

IV.      PLEADING STANDARDS ............................................................................ 18

         A.       Plaintiff Has Sufficiently Alleged the "Who, What, When and Where" of
                  Defendants' Frauds. ............................................................................ 19

    **B.**    **Plaintiff More than Sufficiently Alleges His Proximate Cause as He Was Exposed to and Deceived in Some Manner by Defendants' False, Misleading or Deceptive Marketing of the Balance of Nature Products.** ........................... 20

    **C.**    **The Complaint States a Valid Claim for Unjust Enrichment** ........................ 26

    **D.**    **Plaintiff's Warranty Claims Are Properly Pleaded.** ........................................ 27

        **1.**    **Proper Pre-Suit Notice Was Given.** ........................................................... 27

        **2.**    **The Complaint Adequately Alleges Both Express and Implied Warranty Claims.** ........................................................................... 27

**V.**    **CONCLUSION** ..................................................................................... 29

## <u>TABLE OF AUTHORITIES</u>

Cases

*Abante Rooter & Plumbing, Inc. v. Oh Ins. Agency*, No. 15-CV-9025, 2018 WL 993883 (N.D. Ill. Feb. 20, 2018)................................................................................................................ 13

*Acosta v. Hopper (USA), Inc.*, 2023 WL 3072358 (N.D. Ill. Apr. 25, 2023) .............................. 28

*Adkisson v. Eagleson*, 2023 WL 5580735 (N.D. Ill. August 23, 2023)....................................... 17

*Alvarez v. Smith*, 558 U.S. 87 (2009).......................................................................................... 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................... 18

*Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724 (N.D. Ill. 2015) .......................................... 24, 27

*Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969 (7th Cir. 2020) ................................................. 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 18, 20

*Bell v. Publix Super Markets, Inc.*, 982 F.3d 468 (7th Cir. 2020) .............................................. 24

*Bensen v. Fannie May Confection Brands, Ind.* 944 F.3d 639 (7th Cir. 2019) ........................... 20

*Bonahoom v. Staples, Inc.*, 2021 WL 1020986 (N.D. Ill. Mar. 17, 2021) .................................. 28

*Bonte v. U.S. Bank, N.A.*, 624 F.3d 461 (7th Cir. 2010) ............................................................ 18

*Brodsky v. HumanaDental Ins. Co.,* No. 1:10-CV-03233, 2016 WL 5476233 (N.D. Ill. Sept. 29, 2016) ........................................................................................................................ 15

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) ............................................... 13, 14, 15, 16

*Castaneda v. Amazon.com, Inc.,*No. 22-CV-3187, —— F.Supp.3d ——,2023 WL 4181275 (N.D. Ill. June 26, 2023) ................................................................................................... 25

*Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015) ...................................................... 11

*Chicago Faucet Shoppe, Inc. v. Nestle Waters N.A. Inc.*, 24 F. Supp. 3d 750 (N.D. Ill. 2014) ... 25

*Ciszewski v. Denny's Corp.*, No. 09 C 5355, 2010 WL 2220584 (N.D. Ill. June 2, 2010)........... 22

*Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584 (Ill. 1996) ................................................. 22

*Conrad v. Boiron, Inc.*, 869 F.3d 536 (7th Cir. 2017) ................................................................ 15

*Cosmetique, Inc. v. ValueClick, Inc.*, 753 F. Supp. 2d 716 (N.D. Ill. 2010) .............................. 22

*Counts v. Arkk Food Co.,* No. 23 CV 0236, 2023 WL 7281851 (N.D. Ill. Nov. 3, 2023) ........... 28

*Damasco v. Clearwire Corp.,* 662 F.3d 891 (7th Cir. 2011) ...................................................... 11

*De Bouse v. Bayer*, 922 N.E.2d 309 (Ill. 2009) ......................................................................... 24

*Fauley v. Royal Canin U.S.A., Inc.*, 143 F. Supp. 3d 763 (N.D. Ill. 2016)................................. 15

*Fulton Dental, LLC v. Bisco, Inc.*, 860 F.3d 541 (7th Cir. 2017) ..................................... 12, 13, 15

*Garland v. Children's Place, Inc.*, No. 23 C 4899, 2024 WL 1376353 (N.D. Ill. Apr. 1, 2024) . 25

*Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013).......................................................... 16

*Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873 (7th Cir. 2022) ........................................... 18

*Hadley v. Kellogg Sales Co*., 273 F. Supp. 3d 1052 (N.D. Cal. 2017) ........................................ 28

*Hayes v. Gen. Mills, Inc*., No. 19-CV-05626, 2021 WL 3207749 (N.D. Ill. July 29, 2021).. 26, 28

*Hecker v. Deere & Co.,* 556 F.3d 575 (7th Cir. 2009)..................................................................... 10

*Hendricks v. StarKist Co*., 30 F. Supp. 3d 917 (N.D. Cal. 2014) ................................................ 28

*In re Beyond Meat, Inc., Protein Content Mktg. & Sales Pracs. Litig*., No. 23 C 669, 2024 WL
726838 (N.D. Ill. Feb. 21, 2024).......................................................................... 18, 19, 27

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, 609 F. Supp. 3d 942 (N.D. Cal.
2022) ..................................................................................................................................... 23

*Laurens v. Volvo Cars of N.A., LLC*, 868 F.3d 622 (7th Cir. 2017) ........................................... 16

*Levenstein v. Salafsky*, 164 F.3d 345 (7th Cir. 1998) .................................................................. 10

*Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226 (S.D.N.Y. 2020)....................... 25

*Macias v. Bakersfield Rest., LLC*, 54 F. Supp. 3d 922 (N.D. Ill. 2014) .................................... 10

*Martinez v. Saul*, 2021 WL 825652 (N.D. Ill. Mar. 4, 2021) ...................................................... 17

*Mednick v. Precor, Inc.*, 320 F.R.D. 140 (N.D. Ill. 2017) ............................................................ 22

*Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of Milwaukee*, 708 F.3d 921 (7th Cir.
2013) ..................................................................................................................................... 17

*O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705 (N.D. Ill. 2020)............................................ 25

*Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151 (Ill. 2002) ........................................................ 21, 22

*People of State of California v. San Pablo & T.R. Co.,* 149 U.S. 308 (1893) ............................. 16

*Pirelli Armstrong Tire Corp. v. Walgreen Co.*, No. 09C2046, 2009 WL 2777995 (N.D. Ill. Aug.
31, 2009) ............................................................................................................................... 23

*Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149 (N.D. Ill. 2022) ................. 19, 20, 24, 27

*Russell v. United States*, 661 F.3d 1371 (Fed. Cir. 2011)............................................................. 16

*Schwebe v. AGC Flat Glass N. Am., Inc.*, 2013 WL 2151551 (N.D. Ill. 2013)........................... 25

*Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213 (Ill. 2004) ..................................................... 23

*Sloan v. Anker Innovations Ltd.,* No. 22 C 7174, 2024 WL 935426 (N.D. Ill. Jan. 9, 2024)....... 25

*Tri-Plex Tech. Services, Ltd. v. Jon-Don, LLC*, --- N.E.3d ----, 2024 WL 2341283 (Ill. May 23,
2024) ..................................................................................................................................... 22

v

*Velez v. RM Acquisition, LLC*, 670 F. Supp. 3d. 620 (N.D. Ill. 2023)......................................... 27

*West v. Act II Jewelry, LLC,* No. 15 C 5569, 2016 WL 1073095 (N.D. Ill. Mar. 18, 2016)........ 23

*Womick v. Kroger Co.*, No. 21-CV-00574-NJR, 2022 WL 1266630 (S.D. Ill. Apr. 28, 2022) ... 13

*Wright v. Associated Ins. Cos., Inc.,* 29 F.3d 1244 (7th Cir. 1994)............................................. 10

Statutes

810 Ill. Comp. Stat. 5/2-313(1)(b) ............................................................................................ 27

810 Ill. Comp. Stat. 5/2-314(2)(f) ............................................................................................. 27

810 Ill. Comp. Stat. 5/2-607(3)(a) ............................................................................................ 27

Rules

Fed. R. Civ. P. 9(b) ............................................................................................................. 18, 20

Fed. R. Civ. P. 12(d) ................................................................................................................. 10

Fed. R. Civ. P. 56(d) ................................................................................................................. 10

## I.     INTRODUCTION

Plaintiff William Spivey ("Plaintiff" or "Spivey") respectfully submits this memorandum of law in opposition to Defendant Evig LLC d/b/a Balance of Nature's ("Defendant" or "Evig") Motion to Dismiss the Second Amended Complaint, ECF No. 41 ("SAC"). ECF No. 44-1 ("Motion" or "Def.'s Mot.").

Plaintiff has filed a robust, detailed complaint describing Evig and Dr. Douglas Howard's ("Howard") (together, "Defendants") actionable conduct. The allegations of the SAC are well-pleaded and provide Defendants with more than adequate notice of the claims asserted. Fundamentally, Plaintiff alleges that Defendants have engaged in a wrongful and deceptive course of conduct whereby they market the Balance of Nature products through their product labeling, television ads and their web site as providing meaningful nutrition and health benefits to consumers including boosting their energy levels when, in fact, they only provide trivial/meaningless nutrition at grossly exorbitant prices.

Defendants' assertion that the SAC should be dismissed as moot is without merit. As for Defendants' other arguments, they either seek to inject factual matters outside the SAC, misconstrue the allegations of the complaint, and misapply or ignore well-settled law in the Seventh Circuit and this District. For these and other reasons set forth below, the Court should deny the Motion in its entirety.

## II.    SUMMARY OF COMPLAINT

### A.     Defendants' Marketing of Balance of Nature Is False, Deceptive, or Misleading.

The SAC alleges that prior to the filing of the complaint in this matter and at least since March 1, 2021, the overarching express message imparted by Defendants' marketing of their Balance of Nature products (on the product labeling, on their web site and in their television ads)

has been that taking these products provide health, energy and material nutritional benefits. ECF No. 41 ¶ 3 ("Defendants' over-arching message").[1] Most important, the complaint also pleads that just as the ads on television or YouTube were false deceptive or misleading for those consumers who saw them like Plaintiff, those who bought in reliance on the labeling of the Balance of Nature products were also victims of the same consumer fraud. ECF No. 41 ¶ 45.

Thus, the complaint pleads in great detail that at least as early as March 1, 2021, the labeling of the Balance of Nature products made misleading and deceptive claims. ECF No. 41 ¶ 46. And it should be noted that all consumers were exposed to this labeling even if they only saw a commercial or went to Defendants' web site as the labeling was prominently displayed in both.[2] Thus, at the top of the front of the Balance of Nature labels is "a prominent banner with the following statements "Real Food – Real Science – Real Nutrition." ECF No. 41 ¶ 46. The complaint then sets forth in great detail why each of the banner headings are misleading and deceptive.[3]

### 1. Defendants' "Real Nutrition" Representation Is Misleading and Deceptive.

Defendants represent that the Balance of Nature products provide "Real Nutrition" on their product labeling, television ads and on the product website, conveying to reasonable consumers that these products contribute to one's health and well-being. ECF No. 41 ¶¶ 3, 34, 50. Yet, the

---

[1] While it appeared to Plaintiff's counsel that Defendants changed their labeling and advertising sometime after the filing of the initial complaint in this matter and that Defendants discontinued their misrepresentations, ECF No. 41 ¶¶ 3-9, Defendants deny this to be the case. ECF No. 44-1 at 8 n.6. If Defendants want to admit that they are continuing with their fraudulent course of conduct Plaintiffs will accept these facts as true for purposes of their current motion.

[2] *See, e.g.*, ECF No. 41 ¶¶ 26-27 (labeling repeatedly shown in television ads as well as "real food, real nutrition" spoken by Dr. Howard), 46 (picture of labeling from the web site).

[3] Plaintiff is using the present tense on the basis that Defendants have asserted that these representations continue to this day.

contribution of a daily dose of the Balance of Nature Fruits and Vegetables to a consumer's nutritional needs is trivial, making the "Real Nutrition" representation false, misleading or deceptive. ECF No. 41 ¶¶ 34, 49, 66.

Moreover, out of the 4g of freeze-dried fruits and vegetables in a daily dose of Balance of Nature, 1.5g is sugar—the single largest component of the Balance of Nature products by multiples. ECF No. 41 ¶¶ 42-43. Yet, consumers are paying close to 70 cents per gram for the sugar in Balance of Nature when sugar costs approximately $0.02 per gram. *Id.* And even then the amount of sugar is so small in a daily dose of Balance of Nature that it does not provide any energy boost. ECF No. 41 ¶ 44. On its own, Defendants' failure to disclose that consumers are grossly overpaying for a product that almost 40% of which is vacant calories from sugar, constitutes a material concealment—particularly when Defendants represent that the products provide "Real Nutrition." ECF No. 41 ¶ 44.

In this regard, the "Real Nutrition" representation leads a reasonable consumer to believe that by taking Balance of Nature "they will obtain meaningful nutrition that will meaningfully supplement whatever shortfalls they may have in the daily intakes of fruits and vegetables and contribute to their overall health." ECF No. 41 ¶ 50. [4] Moreover, Defendants expressly market Balance of Nature as filling in the gaps in one's nutritional intakes from food. ECF No. 41 ¶ 55. But nothing could be further from the truth with regard to key vitamins and other important nutrients. ECF No. 41 ¶¶ 49-70. Namely:

> (1) While the RDA for Fiber is 21g for women and 30 for men, with an average daily shortfall of 10-13 grams, the intake from a daily dose of the Balance of Nature products is a meager 0.8 g of fiber, whereas an apple provides 4.4 g (at a cost of $1.00) or

---

[4] See, Merriam-Webster's Definition of "nutrition": "the act or process of nourishing or being nourished." https://www.merriam-webster.com/dictionary/nutrition; Cambridge English Language Dictionary definition of "nourish": "to provide people or living things with food in order to make them grow and keep them healthy." https://dictionary.cambridge.org/us/dictionary/english/nourished.

Metamucil provides 5g at a cost of $0.21 per day (while the same amount from Balance of Nature would costs $14.02 per day). ECF No. 41 ¶¶ 52-59;

(2) Balance of Nature provides a meager 2.747 mg of vitamin C when the RDA is 75mg for women and 90mg for men such that Defendants' products do not make any meaningful contribution to one's nutrition and would not constitute real nutrition to the reasonable consumer. ECF No. 41 ¶¶ 61-64;[5]

(3) And the same is true for all of the key vitamins such as the B vitamins, ECF No. 41 ¶ 65, potassium, calcium, Folate, Vitamin A, Vitamin C, Vitamin E and Vitamin K. ECF No. 41 ¶ 66.

Reasonable consumers would expect that a product that costs $2.33 per day would meaningfully contribute to their overall nutrition, health and well-being, particularly when Defendants market Balance of Nature as doing just that, but, as the above shows, with regard to the key nutrients in the Balance of Nature products nothing could be further from the truth. ECF No. 41 ¶ 67.

## 2. Defendants' "Real Food" Representation Is Misleading and Deceptive.

Defendants' "Real Food" claim, like the "Real Nutrition" claim, leads consumers like Plaintiff to believe that taking Balance of Nature at least provides a "nutritionally meaningful substitute for eating real food such as a serving of fruits and vegetables." ECF No. 41 ¶ 72. But, the Balance of Nature products fall far short of providing any meaningful nutrition or food in that, for example, while a daily dose of Balance of Nature combined Fruits and Vegetables contains less that 3 mg of vitamin C, real food such as an orange has 59 mg of vitamin C, a banana has close to 9 mg of vitamin C, a potato 19.7 mg and even a tomato 12.7 mg. ECF No. 41 ¶ 75. Thus,

---

[5] By way of comparison, while a daily dose of Balance of Nature provides a meager 2.747 mg of vitamin C at a cost of $0.85 per mg, a Centrum Silver Multivitamin provides 100 mg of vitamin C (the same molecule as in the Balance of Nature products) at a cost of less than one cent per mg. ECF No. 41 ¶¶ 35-36. As for filling in gaps in one's nutritional needs due to not eating enough fruits and vegetables, if the comparator is actual fruits and vegetables, not only is 2.747 mg a trivial amount of vitamin C, but the cost of an orange is approximately $1 and contains 51mg of vitamin C at a cost of $0.02 per mg. ECF No. 41 ¶ 39.

while the Balance of Nature products claim to be pulverized versions of various freeze-dried fruits and vegetables such that the claim that they are real food may be deemed literally true, the claim is nevertheless a false and misleading half-truth in the context which it is made. ECF No. 41 ¶¶ 71, 78.[6]

### 3.    Defendants' "Real Science" Claim Is False and Misleading.

Defendants' "Real Science" representation is false or misleading as it implies that there is real science—understood by the reasonable consumer to be what experts in the field would require—peer-reviewed clinical studies performed on the Balance of Nature products proving that the Balance of Nature products provide the represented health and well-being and energy benefits Defendants claim that taking Balance of Nature provides. ECF No. 41 ¶ 79. Yet, Plaintiff's counsel has searched PUBMED for any reported clinical trials on the Balance of Nature products and has found none. ECF No. 41 ¶ 80. And while Defendant used to post a few reports on the Balance of Nature web site about disease claims or lactation in rats, these have been withdrawn from the web site and in any event would have nothing to do with the representations that Plaintiff challenges in this matter. ECF No. 41 ¶¶ 79-84.

### 4.    The Back of Label Misrepresentations Reinforce Those Made on the Front of the Label.

The back of the labels purport to provide "nutritional information" but in fact reinforce the misrepresented benefits of Balance of Nature. ECF No. 41 ¶¶ 86-87. Thus, while no actual nutritional values are provided (as may be allowed by the FDA if no other affirmative statements were made), Defendants claim on the back of the Veggies label that it contains three blends—a "Maintain Blend," a "Protect or Fend Blend," and a "Repair Blend or Refresh Blend." ECF No.

---

[6] *See Beardsall v. CVS Pharmacy, Inc.,* 953 F.3d 969, 973 (7th Cir. 2020) ("A label is deceptive if it is likely to mislead a reasonable consumer in a material respect, even if it is not literally false.").

41 ¶¶ 88-92. And the same blend names appear on the back of the Fruits labels. ECF No. 41 ¶ 93.

And while Defendants argue that they are not required to provide the nutritional values of their products on the back label and that Plaintiff's allegations in this regard are preempted, ECF No. 44-1 at 14, by naming these blends as they do, Defendants go beyond what is allowed by FDA regulations in that they falsely represent that the products will maintain, protect and repair one's health. ECF No. 41 ¶ 94. Thus, it is not the failure to list ingredients on the back of the label that is the problem. Rather it is Defendants' use of the terms "maintain blend" "repair or refresh blend" and "protect or fend blend" that makes the back labeling actionable and nothing in the FDA Act or regulations permit these sorts of misrepresentations.

**B.** **Plaintiff Further Alleges that Defendants' Television Advertising Blitz, Starting at Least as Early as March 1, 2021, Imparted the Same Over-Arching Message as the Labeling.**

Plaintiff Spivey alleges that as early as March 1, 2021, and before he made his purchases of Defendants' products, Defendants began marketing their Balance of Nature products by making "deceptive or misleading dietary supplement health and well-being claims about the purported effects of taking Balance of Nature." ECF No. 41 ¶¶ 12, 25.

The SAC cites to examples of the types of health and well-being YouTube videos and television advertisements that Defendants ran throughout the class period and that communicated the same over-arching health and well-being messages to Plaintiff and the class as did the labelling. ECF No. 41 ¶¶ 25-30. "The sum and substance of these ads communicated one unitary message— that by taking Balance of Nature Fruits and Vegetables a consumer will feel more energetic and healthier." ECF No. 41 ¶ 30. The SAC makes clear that the examples of advertisements set forth in the SAC are just a sampling of the advertisements Defendants have run on their web site and on television "claiming that taking Balance of Nature will provide one with the energy to become more active and healthier." ECF No. 41 ¶¶ 29 (the ads blitzed the television airways on a

nationwide basis with similar claims for at least the last three years), 31 (ads cited were just samples of the ads ran during the class period), 105-06 (examples of ads running before and at the time Plaintiff made his purchase decisions).[7]

Moreover, the SAC's linking to these ads and YouTube videos were not intended to represent the actual television ads that Plaintiff viewed prior to when he made his purchases in 2021. Rather, the SAC's reference to these ads and videos was to depict the type of uniform and consistent messaging Defendants made to Plaintiff and the class about their Balance of Nature products throughout the class period.

## III.    ARGUMENT

### A.    Defendants' Motion Improperly Raises Facts Outside the Complaint.

Defendants argue that the SAC should be dismissed because Plaintiff does not cite to the actual advertisements that he saw prior to his purchase of Balance of Nature, as well as implying (1) that none of the Balance of Nature product labels had the "Real" Banner on the front of their labels prior to or at the time of Plaintiff's purchase and (2) that Defendants' television ads did not communicate the over-arching message Plaintiff alleges Defendants made about their Balance of Nature products throughout the class period. ECF No. 44-1 at 7-10.[8] But, the SAC alleges that prior to Plaintiff's purchase of Defendants' Balance of Nature products he saw and was exposed to television ads (which also portrayed the labeling) all of which conveyed the same false,

---

[7] Defendants submit the Shah Declaration in an attempt to dispute that the ads depicted in the SAC, ECF No. 41 ¶¶ 105-06, ran at the times that are depicted by the iSpot service where these ads were found. But as set forth in the Declaration of John Yuill (attached as Exhibit 1), iSpot notes on its website that these ads had dates of publication that pre-dates Plaintiff's purchases and that as set forth on their web site it is iSpot's business to accurately portray this information. Yuill Decl. ¶ 6. Thus, at best, Defendants have raised a question of fact to be determined later on after the completion of discovery. *See also infra* discussion regarding Defendants' improper injection of facts outside the complaint.

[8] *See infra* discussion as to why Plaintiff does not have the burden of identifying the actual ads he saw as opposed to describing the message that the ads he saw imparted an over-arching message Defendants have consistently conveyed about their products during the class period.

deceptive or misleading representations—that Balance of Nature products would fill in gaps in his nutrition from the foods he ate, provide him health benefits and revitalize/energize him. ECF No. 41 ¶ 104.

In an improper attempt to controvert the well-pleaded allegations of the SAC, Defendants submit the declaration of Ms. Deesha Shah, ECF No. 44-3, who states that the advertisements Plaintiff cited/linked to in the SAC at paragraphs 26-30 were run after he made his purchases of Balance of Nature. ECF No. 44-3 ¶¶ 3-13. Ms. Shah also contends that the Balance of Nature ads pre-dating Plaintiff's purchases as set forth in paragraph 105 of the SAC are from the iSpot.tv web site ("iSpot"), that the dates of publication set forth on the iSpot web site are not derived from the ads themselves and that the author of these descriptions are not identified. ECF No. 44-3 ¶ 15.

Of course, the SAC alleges that these television ads, consistent with the messaging that Plaintiff saw before he made his purchase, were running at or before Plaintiff made his purchase, ECF No. 41 ¶ 105, and thus Ms. Shah's declaration improperly attempts to controvert these well-pleaded facts. Moreover, what is perhaps most significant about Ms. Shah's declaration is what it does not state. Notwithstanding that such information was readily available to her from her client, Ms. Shah fails to contend that the dates depicted on the iSpot web site are inaccurate or that these ads were not run before Plaintiff made his purchases. Moreover, Ms. Shah fails to take into account that it is iSpot's business to accurately portray such information. [9]

As set forth in the Declaration of John Yuill, these ads were found on the iSpot web site and the dates of publication appear to have been made by iSpot. Yuill Decl. ¶ 6. Thus, at a

---

[9] *See, e.g.*, https://www.ispot.tv/about ("Unlike legacy and ad hoc solutions, iSpot is purpose-built to measure the performance of every ad on television with digital-like precision and granularity in real time. With always-on performance insights unified across linear and streaming television, advertisers can take quick and confident action to consistently drive business results."); Yuill Decl. ¶ 6.

minimum, either Plaintiff's well-pleaded allegations that such ads ran before Plaintiff made his purchase must be taken as true at this point in time, or, at a minimum, a question of fact exists as to whether and when they were run.

Ms. Shah also submits a screenshot of Balance of Nature product labels purportedly from March 1, 2021—just prior to Plaintiff's first purchase—that do not have the "Real Food – Real Nutrition – Real Science" banner on the front of the label. ECF No. 44-3 ¶ 16. This is an apparent effort to controvert Plaintiff's well-pleaded allegations that Balance of Nature products' labeling existed on March 1, 2021 that had the "Real Food – Real Nutrition – Real Science" banner as alleged in the SAC. ECF No. 41 ¶ 46.[10] Ms. Shah fails to address whether, as alleged in the SAC, during the time that Defendants were transitioning to the new labels both may have been used as Defendants changed their marketing messages from their illegal marketing of their Balance of Nature products as drugs. ECF No. 41 ¶¶ 19-25. Moreover, in addition to the well-pleaded allegations that the Balance of Nature labels did contain the "real" representations as of March 1, 2021, ECF No. 41 ¶ 46, as set forth in the Declaration of John Yuill, a search on the Wayback Machine shows that as of 3/1/21 Balance of Nature labeling in fact made these "real" representations. Yuill Decl. ¶¶ 3-5.

Moreover, inasmuch as the Shah Declaration improperly injects matters outside of and in contravention to the well-pleaded allegations in the complaint, it should not be considered on a

---

[10] Yet, as set forth in the Yuill declaration, a search on the Wayback machine shows that as of 3/1/21 when one clicked the link to initiate a purchase of the Balance of Nature products, ECF No. 44-2; Smith Decl. ¶ 2; ECF No. 41 ¶ 104, the product labeling depicted on this web page has the real banner on the Balance of Nature labels. Yuill Decl. ¶¶ 3-5. Moreover, it is not as if the real representations were not made well in advance of Plaintiff's purchases, as Defendant was using this message on its letterhead as early as February 2019. *See* Weltman Decl. ¶ 5, Exhibit B (attached as Exhibit 2, a letter written in February 2019 from Defendant to the FDA that has the "real" representations under the Balance of Nature heading at the top of the letterhead).

motion to dismiss, unless the Court, in its discretion, upon notice to the parties, elects to convert Defendants' motion to a summary judgment motion on this issue.[11]

While Plaintiff respectfully requests that the Court not do so and exclude the facts set forth in the Shah Declaration, if the Court elects to convert Defendant's motion to a summary judgment motion, as set forth in the Weltman Declaration (attached as Exhibit 2), in order to adequately respond to a summary judgment motion on these issues and pursuant to Fed. R. Civ. P. 56(d), Plaintiff would need full and complete discovery of all advertising, marketing and labeling Defendants made for the Balance of Nature products at least as early as one year prior to Plaintiff's first purchase in March 2021. Weltman Decl. ¶ 2.

### B. Plaintiff's Claims Are Not Moot.

As a threshold matter, Defendants contend that by sending a check in the amount of $567.88 to Plaintiff purportedly paying him the full amount that he paid for his Balance of Nature products, this settles Plaintiff's individual damages claims thereby mooting his claims and that, as a result, the Court must dismiss his class action complaint. ECF No. 44-1 at 5-7. This is so despite that Plaintiff has made clear on the record, in his communications with Defendants' counsel as

---

[11] "When a party attaches documents to a motion to dismiss, the court must either convert the 12(b)(6) motion into a motion for summary judgment under Rule 56, or exclude the documents attached to the motion to dismiss and continue under Rule 12. *Levenstein v. Salafsky,* 164 F.3d 345, 347 (7th Cir. 1998); *see also* Fed. R. Civ. P. 12(d). A court may consider documents attached to a motion to dismiss, however, if they are referred to in the plaintiff's complaint and if they are central to the plaintiff's claim. *Levenstein,* 164 F.3d at 347 (quoting *Wright v. Associated Ins. Cos., Inc.,* 29 F.3d 1244, 1248 (7th Cir. 1994)). This narrow exception is "aimed at cases interpreting, for example, a contract" and "is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *Id.* The district court ultimately has discretion in determining whether to convert a motion to dismiss into a motion for summary judgment. *Id.; Hecker v. Deere & Co.,* 556 F.3d 575, 583 (7th Cir. 2009); *Macias v. Bakersfield Rest., LLC,* 54 F. Supp. 3d 922, 926–27 (N.D. Ill. 2014). Here, Plaintiff cited to examples of the Balance of Nature labeling that he alleges existed at or before he made his purchase. That other labeling may have existed is not properly before the Court because that other labeling was not "referred to" in the complaint and, of course, the existence of other labeling is not central to Plaintiff's claims but, rather, if it actually existed only serves to create a question of fact.

well as his pleadings, that he has rejected this offer to settle his individual monetary claims. ECF No. 41 ¶¶ 97-100.

As set forth below, since Plaintiff has not accepted Defendants' offer to settle his individual damages claims, under well-settled law in this district and the Seventh Circuit, which in turn applies rudimentary contract law, absent an acceptance on Plaintiff's part, no contract to settle exists, and Plaintiff's claims are still live and are not mooted. Furthermore, merely offering to pay Plaintiff's individual damages claim does not and cannot settle what the Seventh Circuit recognizes as his independent right and interest in serving as a class representative.

Finally, Defendants present an incomplete summary of the Seventh Circuit case law governing this question; as of the four decisions rendered by the Seventh Circuit on this issue, Defendants fail to discuss three of them.

### 1. *Chapman* Overrules *Damasco*.

In *Damasco v. Clearwire Corp.,* 662 F.3d 891, 896 (7th Cir. 2011), the Seventh Circuit initially held that, in the absence of a pending motion for class certification, if a Defendant offered to pay the putative class representative's individual damages claim, his individual claim was mooted and the plaintiff could no longer seek to represent a class of similarly situated persons. But in 2015, *Damasco* was expressly overruled by *Chapman v. First Index, Inc.*, 796 F.3d 783, 786-87 (7th Cir. 2015), where the Seventh Circuit held that an unaccepted offer of judgment made in an effort to pay in full a putative class representative's monetary claims did not moot the putative class representative's claims:

> We overrule *Damasco, Thorogood, Rand*, and similar decisions to the extent they hold that a defendant's *offer of full compensation* moots the litigation or otherwise ends the Article III case or controversy. As Circuit Rule 40(e) requires, this opinion has been circulated to all judges in active service. None favored a hearing en banc.

(emphasis added).

11

Defendants conspicuously fail to discuss *Chapman* at all, even though the above-emphasized language makes clear that an unaccepted "offer of full compensation" regardless of the form in which it is made does not end the litigation. At best, Defendants' failure to even mention *Chapman* at all is perplexing. And if this was not clear from *Chapman*, subsequent Seventh Circuit decisions further cemented this point yet, as will be seen, Defendants fail to discuss two of the other Seventh Circuit decisions that further undercut their mootness arguments.

## 2. *Fulton Dental*: Seventh Circuit Extends Holding of *Chapman*.

*Chapman* was subsequently extended by the Seventh Circuit in *Fulton Dental, LLC v. Bisco, Inc.*, 860 F.3d 541, 545 (7th Cir. 2017) where, instead of making an offer of judgment, the Defendant attempted to moot the class representative's claims by depositing an amount equal to their individual damages into the registry of the court. The Seventh Circuit reiterated its holding in *Chapman*, holding that this payment, having not been accepted by the plaintiff, constituted an unaccepted offer to settle and since no contract existed this did not moot class representative's claims. Moreover, the Court went further holding that just making an offer to pay a putative class representative their actual damages was an insufficient offer to settle:

> It is enough for present purposes to reconfirm that as long as the proposed class representative *has not lost on the merits before a class certification motion is filed, it is not barred from seeking class treatment*…We conclude that an unaccepted offer to settle a case, accompanied by a payment intended to provide full compensation into the registry of the court under Rule 67, is no different in principle from an offer of settlement made under Rule 68. *The law governing unaccepted contractual offers, as well as the law of tenders, supports this result.* Moreover, the court's registry is not the kind of "individual account" controlled by the plaintiff that was contemplated in the question reserved by *Campbell–Ewald. Finally, we cannot say as a matter of law that the unaccepted offer was sufficient to compensate plaintiff Fulton for its loss of the opportunity to represent the putative class.*

*Id.* (emphasis added).[12]

---

[12] In between *Chapman* and *Fulton Dental*, the Supreme adopted the same approach—no acceptance of

As the above-emphasized language notes, the key litmus test is whether or not the class motion has been denied—not whether or not an offer to settle on an individual basis has been made. The Seventh Circuit also made clear that merely offering to pay the full amount of a putative class representative's individual damages claim does not constitute full payment of that to which he may be entitled. That is because an offer to pay the putative class representative's individual damages does not compensate him for "the additional reward that [he] hopes to earn by serving as the lead plaintiff for a class action." *Id.* at 545. It was for this reason that the Seventh Circuit held "we cannot say as a matter of law that the unaccepted offer was sufficient to compensate plaintiff for its loss of opportunity to represent the putative class." *Id.* at 547.[13] And of course, the amount of a potential success reward cannot and should not be determined until Plaintiff achieves a successful result for the class he seeks to represent.[14]

### 3. What Was Left Open by *Campbell-Ewald* Has Been Closed by the Seventh Circuit.

Defendants argue that because Plaintiff's counsel did not return the check to Defendants this somehow fits within an exception that the Supreme Court left open in *Campbell-Ewald*. ECF No. 44-1 at 6-7.[15] Defendant is wrong. Because the question was not before it, the Supreme Court

---

offer to settle—no contract and no mootness:

> We hold today, in accord with Rule 68 of the Federal Rules of Civil Procedure, that an unaccepted settlement offer has no force. Like other unaccepted contract offers, it creates no lasting right or obligation. With the offer off the table, and the defendant's continuing denial of liability, adversity between the parties persists.

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016), as revised (Feb. 9, 2016).

[13] *See also Abante Rooter & Plumbing, Inc. v. Oh Ins. Agency*, No. 15-CV-9025, 2018 WL 993883, at *6 (N.D. Ill. Feb. 20, 2018) (in *Fulton Dental* the Seventh Circuit rejected this "race to the court analysis").

[14] Further, it makes no difference that Defendants styled their offer as a refund. *See Womick v. Kroger Co.*, No. 21-CV-00574-NJR, 2022 WL 1266630, at *6 (S.D. Ill. Apr. 28, 2022) ("unaccepted refund" does not moot claims).

[15] Yet, Defendants can only cite to Chief Justice Roberts' dissent and his unilateral characterization of the Court's majority opinion as support for the existence of this exception, and even then Justice Roberts did not say that the plaintiff's counsel holding a check made out to the Plaintiff constitutes acceptance as

in *Campbell-Ewald* declined to rule on whether the result would be different if the defendant had deposited a sum of money into an account payable to the Plaintiff. *Campbell-Ewald*, 577 U.S. at 166.

Defendants' argument is premised on their contention that Plaintiff admitted in the SAC that Defendants' check remained in the possession of Plaintiff's counsel and that this somehow constitutes an acceptance of Defendants' offer to settle. First, all Plaintiff alleges in the SAC is that he sent the check to his counsel and instructed counsel to reject the offer. ECF No. 41 ¶ 98.[16] Nowhere does he admit that the check remained in his counsel's possession and the fact is that on May 23, 2023, before the SAC was filed and almost one-and one-half months before Defendants filed their current motion to dismiss, Plaintiff's counsel returned the check to Defendants' counsel by hand delivery.[17] But even if the check had remained in Plaintiff's counsel's possession, Defendants' argument makes no sense, as the offer to settle still remained unaccepted even if Plaintiff's counsel held the check to this day as it had not been negotiated and cashed by the Plaintiff.

Moreover, Defendants ignore that the Seventh Circuit addressed the issue left open by the Court in *Campbell-Ewald*. In *Fulton Dental*, the defendant deposited the full amount of the

---

Defendants must here. Moreover, the majority opinion expressly rejected Justice Roberts' reasoning. *Id*. at 165.

[16] And if this were not enough, the Second Amended Complaint also makes clear that Plaintiff rejected Defendants' offer of settlement and that "as a matter of the law of contracts the offer of settlement is a nullity and of no legal effect." ECF No. 41 ¶¶ 97-100.

[17] Weltman Decl. ¶¶ 3-4. The May 23, 2024, enclosure letter that accompanied the check stated:

Counsel - while it is abundantly clear on the record that Plaintiff rejects and has rejected Defendants' offer to settle this matter, to put belts and suspenders on it, enclosed is the check that your client tendered to Plaintiff in the amount of $567.88. Plaintiff will not accept any offers to settle that do not include appropriate monetary relief for the class he seeks to represent.

plaintiff's individual damages claims into the registry of the district court and the district court, in ruling in favor of defendant and dismissing the matter as moot, treated this as making a payment "directly" to the plaintiff. *Fulton Dental*, 860 F.3d at 543. Yet, the Seventh Circuit reversed, holding that placing the money in the registry of the court was not placing money in an account payable to the plaintiff. *Id.* at 545. Moreover, the Seventh Circuit made clear, as it had in *Chapman*, that the controlling principle behind its decision was that an unaccepted offer of settlement does not moot a class representative's claims:

> From a broader perspective, we see no principled distinction between attempting to force a settlement on an unwilling party through Rule 68, as in *Campbell–Ewald*, and attempting to force a settlement on an unwilling party through Rule 67. *In either case, all that exists is an unaccepted contract offer, and as the Supreme Court recognized, an unaccepted offer is not binding on the offeree.*

*Id.* (emphasis added).[18]

For the same reasons, even if the check remained in Plaintiff's counsel's possession to this day, which it does not, the same principle applies—in the absence of Plaintiff cashing the check it still remains an unaccepted offer to settle.

### 4. Defendants Fail to Discuss Two Subsequent Seventh Circuit Decisions that Further Lay to Rest Their Mootness Arguments, Yet They Cite Cases that Were Either Expressly or Implicitly Overruled or Distinguished by the Supreme Court in *Campbell-Ewald*.

Finally, Defendants fail to discuss two subsequent Seventh Circuit decisions that further cement the proposition that an unaccepted offer of settlement does not and cannot moot the putative class representative's claims. *See Conrad v. Boiron, Inc.*, 869 F.3d 536, 538, 542 (7th Cir.

---

[18] *See also Brodsky v. HumanaDental Ins. Co.,* No. 1:10-CV-03233, 2016 WL 5476233, at *4 (N.D. Ill. Sept. 29, 2016) ("This Court finds more persuasive those cases rejecting a defendant's attempt to invoke the hypothetical reserved in *Campbell-Ewald. See Fauley v. Royal Canin U.S.A., Inc.*, 143 F. Supp. 3d 763, 765 (N.D. Ill. 2016) (characterizing the alternative view as "inconsistent" with *Campbell-Ewald*). At bottom, *Campbell-Ewald* constitutes an admonishment that **"a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted."** *Campbell-Ewald Co.*, 136 S. Ct. at 672.")).

2017) (following *Fulton* and holding that "an unaccepted offer cannot moot a case," and further, that a plaintiff may refuse a generous settlement offer because "so-called negative-value cases are sometimes rational, if the party hopes to establish an important principle through the case"); *Laurens v. Volvo Cars of N.A., LLC*, 868 F.3d 622, 623 (7th Cir. 2017) (citing *Campbell-Ewald* and *Fulton* in holding that "an unaccepted offer of relief before a putative plaintiff files a lawsuit [does not] deprive[] that plaintiff of standing").[19]

And after ignoring these controlling Seventh Circuit decisions as well as numerous district court decisions, Defendants cite to three pre-*Campbell-Ewald* Supreme Court decisions. ECF No. 44-1 at 5. Each of these decisions—*People of State of California v. San Pablo & T.R. Co.,* 149 U.S. 308 (1893); *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013) and *Alvarez v. Smith*, 558 U.S. 87 (2009)—were either expressly distinguished, overruled or overridden by *Campbell-Ewald*.[20]

---

[19] *See also Fauley*, 143 F. Supp. 3d at 765 (rejected settlement offer does not moot claims); *Jeffries v. Swank*, 317 F.R.D. 543, 550 (N.D. Ill. 2016) (same); *Prac. Mgt. Support Services, Inc. v. Cirque du Soleil Inc.*, No. 14 C 2032, 2016 WL 5720381, at *4 (N.D. Ill. Sept. 30, 2016) (same); *Brodsky*, 2016 WL 5476233, at *3 (same); *Wendell H. Stone Co., Inc. v. Metal Partners Rebar, LLC*, 318 F.R.D. 343, 346 (N.D. Ill. 2016) (same); *Heather McCombs, D.P.M., L.L.C. v. Cayan LLC*, No. 15 C 10843, 2017 WL 1022013, at *4 (N.D. Ill. Mar. 16, 2017) (same); *Baro v. Lake Cnty. Fedn. of Teachers Loc. 504, IFT-AFT/AFL-CIO*, 594 F. Supp. 3d 1012, 1016 (N.D. Ill. 2022), aff'd, 57 F.4th 582 (7th Cir. 2023), *cert. denied*, 143 S. Ct. 2614 (2023) ("unaccepted settlement offer" does not moot claims).

[20] "This question, on which Courts of Appeals have divided, was reserved in *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. ——, ——, ——, n. 4, 133 S.Ct. 1523, 1528, 1529, n. 4, 185 L.Ed.2d 636 (2013). We hold today, in accord with Rule 68 of the Federal Rules of Civil Procedure, that an unaccepted settlement offer has no force. Like other unaccepted contract offers, it creates no lasting right or obligation. With the offer off the table, and the defendant's continuing denial of liability, adversity between the parties persists….[And] In urging that an offer of judgment can render a controversy moot, Campbell features a trio of 19th-century railroad tax cases *California v. San Pablo & Tulare R. Co.*, 149 U.S. 308, 13 S.Ct. 876, 37 L.Ed. 747 (1893), *Little v. Bowers*, 134 U.S. 547, 10 S.Ct. 620, 33 L.Ed. 1016 (1890), and *San Mateo County v. Southern Pacific R. Co.*, 116 U.S. 138, 6 S.Ct. 317, 29 L.Ed. 589 (1885). *None of those decisions suggests that an unaccepted settlement offer can put a plaintiff out of court."* *Campbell-Ewald*, 555 U.S. at 156, 163 (Emphasis added).

Defendants also cite a pre-*Campbell-Ewald* decision from the Federal Circuit that presumably has been overridden as well. *See Russell v. United States*, 661 F.3d 1371 (Fed. Cir. 2011).

And quoting from a pre-*Chapman* case where the Plaintiff actually accepted the Defendant's settlement offer, Defendants assert a legal non-sequitur, that Plaintiff does not have the right to determine mootness here. ECF No. 44-1 at 6.[21] Yet, Defendants' argument in this regard ignores that it is the case law decided by the Seventh Circuit that determines that this matter is not moot as a result of Plaintiff not accepting their offer. For the same reason, Defendants' reliance on *Martinez v. Saul*, 2021 WL 825652, at *3-5 (N.D. Ill. Mar. 4, 2021) is misplaced as in that case the Plaintiff accepted the monies paid by defendants. Likewise, *Adkisson v. Eagleson*, 2023 WL 5580735, *2 (N.D. Ill. August 23, 2023) is inapposite, as the plaintiffs' injuries there were not based in damages but, rather, arose out of a claimed injury to their credit status with their respective nursing homes to whom the monies were owed when the Illinois Department of Human Services did not pay them on a timely basis. But this injury was corrected when the IDHS paid the monies directly to their nursing homes and, moreover, unlike here, since the payments were made directly to the nursing homes the plaintiffs could not reject the payments. *Id.* at *4. But, if in fact, *Martinez* and *Adkisson* can be read to stand for the proposition that the unaccepted offer here moots Plaintiff's claims, they are clearly outliers that should not be followed in light of the over-whelming weight of authority to the contrary.

Finally, Defendants improperly argue another set of facts outside of the complaint—that Plaintiff offered to settle his individual claims in his warranty demand letter. ECF No. 44-1 at 7. Yet, nothing could be further from the truth as the demand letter makes clear that Plaintiff was demanding Defendants settle the Plaintiff's warranty claims on a class-wide basis, and this was reiterated in subsequent communications when Defendants attempted to erroneously trump up

---

[21] Citing *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of Milwaukee*, 708 F.3d 921, 933 (7th Cir. 2013).

acceptance language from this letter when none existed. See Schaffer Declaration (attached as Exhibit 3).

## IV.    PLEADING STANDARDS

A plaintiff is required to plead "only enough facts to state a claim to relief that is plausible on its face" in order to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "The bar to survive a motion to dismiss is not high. [A] well-pleaded complaint may proceed even if it strikes a savvy judge [that] recovery is very remote and unlikely." *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 881 (7th Cir. 2022) (internal quotation marked omitted) (citing *Twombly*, 550 U.S. at 556; *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010)).

The court must accept all well-pled facts alleged in the complaint as true and draw all reasonable inferences in plaintiffs' favor in evaluating a motion to dismiss. *Gociman*, 41 F.4th at 881 (citation omitted); *In re Beyond Meat, Inc., Protein Content Mktg. & Sales Pracs. Litig.*, No. 23 C 669, 2024 WL 726838, at *3 (N.D. Ill. Feb. 21, 2024) (citations omitted). Only if it is evident "that no relief could be granted under any set of facts that could be proved consistent with the allegations" should a motion to dismiss be granted. *Id.* (internal quotation marks and citations omitted). A complaint will survive a Rule 12(b)(6) motion as long as it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged". *In re Beyond Meat, Inc.*, 2024 WL 726838, at *3 (citations and internal quotation marks omitted).

While a complaint that sounds in fraud is to be plead with regard to Fed. R. Civ. P. 9(b)'s particularity requirements, "This ordinarily requires describing the 'who, what, when, where, and

18

how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *In re Beyond Meat, Inc*, 2024 WL 726838, at *4 (citation omitted); *Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1158 (N.D. Ill. 2022).

**A.      Plaintiff Has Sufficiently Alleged the "Who, What, When and Where" of Defendants' Frauds.**

The SAC adequately pleads and puts Defendants on notice of Defendants' consumer frauds as Plaintiff pleads the "who, what, when, where, and how" of Defendants' consumer frauds and deception.

As the summary of the complaint above makes clear, the SAC sets forth: (1) the who (Defendants, the plaintiff and the class), (2) the what (Defendants' over-arching message about the Balance of Nature products—*e.g.*, that they provide meaningful nutrition/real food, health well-being and a boost in energy levels), (3) the when (since at least March 1, 2021), (4) the where (on the labels, in television ads and Defendants' web site) and (5) the how (by Defendants' over-arching message which is alleged to be false, misleading or deceptive).

Recently the Court had occasion to rule on a motion to dismiss in a consumer fraud action that serves as a guide here. In *Rudy*, the Court sustained a consumer fraud class action complaint alleging that the defendant's labeling of its product as "smoked almonds" was actionable consumer fraud because it was alleged they were not roasted over an open fire and in fact they were flavored with "natural smoke flavor", yet plaintiff alleged that she had read "smoked almonds" as meaning that it was roasted over an open fire. 583 F. Supp. 3d at 1155-56. Most notably, there was no allegation that the defendant in *Rudy* had affirmatively stated that the almonds were "roasted over an open fire," but nevertheless the Court sustained the plaintiff's claims apparently based upon the implied representation that was conveyed by use of the term "smoked." *Id.* at 1156-57.

19

If "smoked' can allow a reasonable consumer to infer that the almonds were roasted over an open fire, "real nutrition" and "real food" requires little to no implication, as these messages clearly impart to the reasonable consumer that by taking Balance of Nature "they will obtain meaningful nutrition that will meaningfully supplement whatever shortfalls they may have in their daily intakes of fruits and vegetables and contribute to their overall health." ECF No. 41 ¶ 50. In fact, this messaging is expressly conveyed in Defendants' television ads as well. ECF No. 41 ¶¶ 30, 105.

In sustaining the complaint in *Rudy* the Court noted the well-settled principle that the complaint was to be construed in a light most favorable to the plaintiff, accepting as true all well-plead facts, drawing all inferences in plaintiff's favor and that the complaint need not provide "detailed factual allegations" but allege facts "sufficient 'to raise a right to relief above the speculative level.'" *Id*. (quoting *Twombly*, 550 U.S. 544 at 555). Moreover, with regard to the heightened pleading standards under Fed. R. Civ. P. 9(b), the plaintiff was only required to 'identify the 'who, what when, where, and how' of the alleged fraud." (quoting *Bensen v. Fannie May Confection Brands, Ind*. 944 F.3d 639, 646 (7th Cir. 2019)). Applying these principles to the SAC here it should be accepted as true Plaintiff's allegations that Defendants' labeling, advertising and website imparted the same over-arching message—that the Balance of Nature products provided meaningful nutrition, contributed to one's health and well-being and provided one with more energy. *See, e.g.*, ECF No. 41 ¶¶ 3, 30, 50, 73, 105-07.

**B.**     **Plaintiff More than Sufficiently Alleges His Proximate Cause as He Was Exposed to and Deceived in Some Manner by Defendants' False, Misleading or Deceptive Marketing of the Balance of Nature Products.**

Plaintiff saw television ads promoting Balance of Nature that led him to believe "that taking the Balance of Nature products would fill in the gaps in the nutrition he obtained from eating food, provide him with health benefits as well and revitalize/energize him." ECF No. 41 ¶ 104.

After viewing the ads, he called the telephone number set forth in the ad and subscribed to monthly purchases of Balance of Nature. ECF No. 41 ¶ 104.

Given the SAC's detailed allegations as to why Defendants' over-arching message is false, misleading or deceptive, the SAC more than adequately pleads Plaintiff's proximate cause in that he was deceived in "some manner" by Defendants' representations about their products and lost money. *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 164 (Ill. 2002) (reliance is not an element of an ICFA claim—rather all Plaintiff need plead and prove to satisfy the causation element under the ICFA is that they were exposed to the misrepresentations in question and were deceived in "some manner"). After several months, Plaintiff concluded that the products were not providing him the represented benefits so he stopped taking Balance of Nature. ECF No. 41 ¶ 104. As a result, Plaintiff suffered injury in fact and lost money because if he had known the truth about Balance of Nature he would not have purchased it. ECF No. 41 ¶ 104. A more classic pleading of proximate cause is hard to find.

Defendants also miss the point when they contend that the advertisements Plaintiff links to at paragraph 30 in the SAC were not running when Plaintiff made his purchases. ECF No. 44-1 at 8. Plaintiff alleges that he saw television advertisements that imparted similar messages to those linked in the complaint as well being made on Defendants' labeling and web site and these allegations must be taken as true. ECF No. 41 ¶ 104. Moreover, that is all that is required at the pleading stage. But in addition to the television ads cited at paragraph 30 of the SAC, the SAC also links to television ads that were running at or prior to Plaintiff's purchase that impart similar messages as those in paragraph 30. ECF No. 41 ¶¶ 105-06.[22]

---

[22] For the reasons stated above, Defendants' arguments that these ads were not running when Plaintiff made his purchases in 2021 is outside of the facts plead in the SAC and, at best, a question of fact not properly made at the motion to dismiss stage.

Defendants' argument that Plaintiff fails to identify the actual ads that he saw, ECF No. 44-1 at 8, grossly overstates what is required at the pleading stage and in support of this argument, Defendants cite to a hodgepodge of cases that are factually distinguishable and, most importantly, do not require this sort of precision. *See Tri-Plex Tech. Services, Ltd. v. Jon-Don, LLC*, --- N.E.3d ----, 2024 WL 2341283, *2 and *5 (Ill. May 23, 2024) (a case brought by a non-consumer/ competitor of the defendants under the "consumer nexus" theory—Illinois Supreme Court rejected the consumer nexus theory holding that an ICFA plaintiff must allege proximate that they were deceived by Defendants' representations); *Oliveira*, 776 N.E.2d at 164 (plaintiff admitted that he did not see Defendants' ads yet in order to establish proximate cause a plaintiff must be "deceived in some manner" by being exposed to Defendants' ads); *Ciszewski v. Denny's Corp.*, No. 09 C 5355, 2010 WL 2220584, at *2 (N.D. Ill. June 2, 2010) (unlike here, Plaintiff failed to allege "the communications that he claimed were fraudulent."); *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 592 (Ill. 1996) (unlike here, the plaintiffs in *Connick* failed to alleged that any of them had seen or relied upon any of the brochures or owners' manuals they were challenging but notably the court did sustain their claims as to an article in Car and Driver); *Cosmetique, Inc. v. ValueClick, Inc.*, 753 F. Supp. 2d 716, 721 (N.D. Ill. 2010) (another consumer nexus theory case that has no applicability here and to the extent that Defendants are relying upon *Cosmetique* for the proposition that Plaintiff must identify the actual ads he saw, all the court in *Cosmetique* required was that the plaintiff to describe the statements made by defendant that it contended were actionable which, of course Plaintiff does here); *Mednick v. Precor, Inc.*, 320 F.R.D. 140 (N.D. Ill. 2017) (a premature citation as it is a ruling on class certification where, in deciding which misrepresentations could serve as the basis of the class's fraud claims, the court certified for class treatment the representations on the product that the evidence showed were ones that the class

members saw -yet whether and what can serve as the media though which the actionable representations can be proven on a common class-wide basis here must be left to a determination after discovery);[23] *Pirelli Armstrong Tire Corp. v. Walgreen Co.*, No. 09C2046, 2009 WL 2777995, at *4 (N.D. Ill. Aug. 31, 2009); *Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 219 (Ill. 2004) (a plaintiff need not allege the identity of a particular person who made the actionable misrepresentations when their claims arise out of uniform nationwide representations made in advertisements and product labels promulgated by the corporate defendants).[24]

Simply put, Defendants' contention that Plaintiff must identify every television ad he saw with exactitude along with their times, and locations, is not supported by the above cases and, if accepted, would effectively eliminate any remedy for consumer fraud in Illinois, as consumers would need to keep meticulous records of the circumstances of every advertisement they ever saw and every purchase they made on the off chance that it turned out that a particular product they purchased was tainted with fraud. "Courts considering 'deceptive advertising claims should take

---

[23] *See, e.g., In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, 609 F. Supp. 3d 942, 984 (N.D. Cal. 2022) ("Plaintiffs have shown through their experts that for purposes of this motion—subject to defendants' objections at summary judgment or trial—JLI employed a consistent message/USP in its marketing as well as opinions on the methods and reach of that messaging. That showing is combined with evidence that some significant portion of class members actually saw and relied on representations and messages conveyed in JLI's marketing and labelling (first-party reliance) and the testimony of others who relied on third parties (reliance allegedly intended, promoted, and expected by JLI). As a result, proximate causation could be shown on a class-wide basis. That some debatable portion of the class may not have seen or cannot recall the specific advertisements they saw prior to their first purchase, or that some may have started using JUUL because they were offered the product by friends, does not defeat certification given RICO's strict proximate causation requirement at this juncture.").

[24] *See also West v. Act II Jewelry, LLC,* No. 15 C 5569, 2016 WL 1073095, at *4 (N.D. Ill. Mar. 18, 2016) ("LiaSophia contends that Hollander failed to allege a specific date that Lia Sophia decided it would not honor the Lifetime Guarantee and Hollander failed to allege the specific dates that she purchased jewelry. Hollander, however, is not required to provide such detail in her pleadings to state a valid ICFA claim. At the summary judgment stage, Hollander will need to point to sufficient evidence showing that Lia Sophia did not intend to honor the Lifetime Guarantee at some point and that Hollander purchased jewelry after that point. Therefore, Lia Sophia's motion to dismiss the ICFA claim brought by Hollander against Lia Sophia is denied."). Here, Plaintiff has specifically identified Defendant Howard by name. ECF No. 41 ¶¶ 26-28 (spokesperson in television ads), 109 (person responsible for the entire marketing scheme).

into account all the information available to consumers and the context in which that information is provided and used.' 'What matters most is how real consumers understand and react to the advertising.'" *Rudy*, 583 F. Supp. 3d at 1158 (quoting *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476 (7th Cir. 2020)) (citation omitted). Under the circumstances of the case—*i.e.*, buying a uniform product with uniform nationwide advertising and labeling—Plaintiff has more than sufficiently alleged the who, what, when, where, and how of Defendants' actionable conduct.

Moreover, at this preliminary stage, Defendants cannot credibly assert that each advertisement or label is an independent and discrete event/misrepresentation, because the SAC alleges they communicated the same over-arching message. Indeed, all of Defendant's advertisements and labels are simply instances of the *same* misrepresentations and since Plaintiff has alleged he relied on the television ads he viewed, that same reliance can be imputed as to all marketing and advertising materials that carry the same deceptive messaging. Yet, in support of this overreach, Defendant cites to cases that are inapposite. In *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009), the plaintiff "acknowledged that she did not rely on any statements from Bayer in purchasing Baycol." And in *Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 737 (N.D. Ill. 2015), the plaintiff alleged that 16 individual Defendants had made numerous challenged statements but failed to allege which statements were made by which defendants as well as describing what the statements in question actually said.[25]

Here, Plaintiff has described the statements and has identified the corporate Defendant, Evig and Defendant Howard as having made them. In *O'Connor v. Ford Motor Co.*, 477 F. Supp.

---

[25] "Plaintiff's complaint is replete with allegations recounting vague, nonspecific statements made by "Defendants" about Anatabloc's supposed benefits. But Plaintiff has not identified a single actual misrepresentation that was communicated to Plaintiff, much less which Defendant made it." *Baldwin*, 78 F. Supp. 3d at 737 (N.D. Ill. 2015).

3d 705 (N.D. Ill. 2020), the plaintiff cited to specific representations, but "[t]he complaint [did] not identify anything in the three excerpts that is purportedly false." Defendants also cite to *Chicago Faucet Shoppe, Inc. v. Nestle Waters N.A. Inc.*, 24 F. Supp. 3d 750 (N.D. Ill. 2014), and *Garland v. Children's Place, Inc.*, No. 23 C 4899, 2024 WL 1376353 (N.D. Ill. Apr. 1, 2024). The plaintiff in *Chicago Faucet Shoppe* did not see and thus was not deceived in some manner by the challenged statements.[26] And *Garland* was an omissions case where the court held that the defendant was not under a duty to disclose.[27]

Finally, Defendants ad hominem argument that the over-arching message made by them about the Balance of Nature products is mere puffery, strains credulity. ECF No. 44-1 at 25. Stating to consumers that they are going to receive meaningful nutrition that will enhance their health and well-being as well boost their energy are concrete statements regarding "real" benefits to be obtained from taking these products. These are not fuzzy statements about abstract qualities of these products (like "high quality" or "ultimate") as are the case in the cases cited in footnote 16 of Defendants' brief. ECF No. 44-1 at 25 n.16.[28]

---

[26] *Chicago Faucet Shoppe, Inc.*, 24 F. Supp. 3d at 763 ("no basis on which to infer that Chicago Faucet saw, let alone was deceived by, any misbranding before purchasing the water.").

[27] *Garland*, 2024 WL 1376353, at *7 ("Based on the context and available information as pleaded in the complaint, the Court concludes the plaintiffs have not plausibly alleged that TCP's silence regarding the presence of PFAS in its clothing deceives consumers into believing its school uniform products are PFAS-free.").

[28] *See Sloan v. Anker Innovations Ltd.,* No. 22 C 7174, 2024 WL 935426, at *7 (N.D. Ill. Jan. 9, 2024):

> Puffery is a statement of subjective description or opinion, and is not actionable as a fraudulent misrepresentation." *Castaneda v. Amazon.com, Inc.*, No. 22-CV-3187, ⸺ F.Supp.3d ⸺, ⸺, 2023 WL 4181275, at *6 (N.D. Ill. June 26, 2023) (citations omitted). "Puffing 'denotes the exaggerations reasonably to be expected of a seller as to the degree of quality of his or her product, the truth or falsity of which cannot be precisely determined.'" *Schwebe v. AGC Flat Glass N. Am., Inc.*, 2013 WL 2151551, at *4 (N.D. Ill. 2013) (quoting *Avery*, 216 Ill. 2d at 173, 296 Ill.Dec. 448, 835 N.E.2d 801); *see also Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 241 (S.D.N.Y. 2020) (defining puffery as "generalized or exaggerated statements which a reasonable consumer would not interpret as a factual claim upon which he could rely ... [or] an exaggeration or overstatement expressed in broad, vague, and commendatory language, as distinguished

### C.     The Complaint States a Valid Claim for Unjust Enrichment.

Under Illinois law, where, as here, unjust enrichment claims are predicated on the same conduct as alleged under the ICFA, "the claims rise and fall together." *Thomas v. Walmart Inc*., No. 23 CV 5315, 2024 WL 1050179, at *10 (N.D. Ill. Mar. 11, 2024) ("Because the Court concludes that the plaintiffs have stated claims for violations of the ICFA, . . . the Court denies Walmart's motion to dismiss their unjust enrichment claims."); *In re Beyond Meat, Inc.*, 2024 WL 726838, at *14 ("because at least some of Plaintiffs' other claims based on the same conduct survive Beyond Meat's motion to dismiss, the unjust enrichment claim may proceed to the same extent"). For the reasons set forth above, Plaintiff has properly stated claims under the ICFA and Defendant's assertion that the unjust enrichment claim should be dismissed is misplaced.

Defendant's alternate argument that dismissal of the unjust enrichment claim is warranted because Plaintiff and Evig "have . . . a sales contract for purchase of the supplements" is likewise misplaced. ECF No. 44-1 at 25. Defendants cite paragraph 104 of the SAC as support that plaintiff has alleged the existence of a contract. Paragraph 104 states the facts required to state a valid cause of action for consumer fraud. And the law is well-settle that when a valid claim for consumer fraud is alleged, unjust enrichment can be alleged as well. *Hayes v. Gen. Mills, Inc*., No. 19-CV-05626, 2021 WL 3207749, at *4 (N.D. Ill. July 29, 2021) (where plaintiff adequately stated a ICFA claim, additional claims for unjust enrichment, and breach of express warranty also allowed to proceed

---

from misdescriptions or false representations of specific characteristics of a product"); *Martin*, 2010 WL 3928707, at *3 (same for Mass. Ch. 93A). "Examples of puffery include 'high-quality,' 'expert workmanship,' 'custom quality,' 'perfect,' 'magnificent,' 'comfortable,' and 'picture perfect.' " *Lateef v. Pharmavite LLC*, No. 12 C 5611, 2013 WL 1499029, at *3 (N.D. Ill. Apr. 10, 2013); *see also Isaac v. Ashley Furniture Indus., Inc.*, No. CV 17-11827-RGS, 2017 WL 4684027, at *1 (D. Mass. Oct. 18, 2017) (listing "slogans, catch phrases, and focus-grouped puffing by manufacturers and distributors [who are] striving to make themselves heard in the din of a consumption-driven marketplace" as nonactionable puffery).

because they were based on the same allegedly misleading conduct as the ICFA claim). *See also Rudy*, 583 F. Supp. 3d at 1166 (unjust enrichment claim sounds in quasi-contract "where no exists in order to prevent unjust results").

### D. Plaintiff's Warranty Claims Are Properly Pleaded.

#### 1. Proper Pre-Suit Notice Was Given.

Under Illinois law, a plaintiff must provide pre-suit notice to a defendant before bringing a claim for breach of express or implied warranty. 810 Ill. Comp. Stat. 5/2-607(3)(a). Here, Pre-suit notice was made in a letter dated May 15, 2024—almost one-month before filing of the warranty claims added in the SAC. ECF No. 41 ¶ 151; Schaffer Decl. ¶ 2.

#### 2. The Complaint Adequately Alleges Both Express and Implied Warranty Claims.

"To state a claim for breach of express warranty, plaintiffs must allege that (1) the seller made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) seller guaranteed that the goods would conform to the affirmation or promise." *Baldwin*, 78 F. Supp. 3d at 739; *Rudy*, 583 F. Supp. 3d at 1161; *Velez v. RM Acquisition, LLC*, 670 F. Supp. 3d. 620, 635 (N.D. Ill. 2023).

Product labels and advertisements can create express warranties. At this stage, it is sufficient plaintiff has pleaded alleged warranties that plausibly could have been the basis of the bargain. 810 Ill. Comp. Stat. 5/2-313(1)(b) ("Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."); 810 Ill. Comp. Stat. 5/2-314(2)(f) (merchantable goods must "conform to the promises or affirmations of fact made on the container or label if any"); *In re Beyond Meat, Inc.*, 2024 WL 726838, at *12.

As more fully set forth in the Plaintiff's summary of the complaint, Plaintiff alleges that Defendants have affirmatively stated facts that promise that by taking the Balance of Nature products one will obtain meaningful nutrition that contributes to one's health and well-being as well as providing a boost in energy. These served as the basis of the bargain for Plaintiff and the class purchasing these products and these statements warranted that the goods would perform in this manner, when as alleged in the SAC they did not and could not. ECF No. 41 ¶¶ 140-52.

Likewise, an implied warranty arises when goods are sold which are not merchantable or fit for the ordinary purpose for which the goods are used at the time of sale, causing damage. And, "[w]hen an implied warranty of merchantability cause of action is based solely on whether the product in dispute '[c]onforms to the promises or affirmations of fact' on the packaging of the product, the implied warranty of merchantability claim rises and falls with express warranty claims brought for the same product." *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1096 (N.D. Cal. 2017) (quoting *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 933 (N.D. Cal. 2014)).

Here, Plaintiff's claims for breach of implied warranty should also be sustained because the SAC adequately alleges that Defendants' over-arching message contains actionable misrepresentations and as such the Balance of Nature products are not fit for the ordinary purpose for which they were intended.

Finally, where, as here, the complaint states a valid cause action for consumer fraud it follows that the breach of warranty claims should be sustained as well. *See Counts v. Arkk Food Co.,* No. 23 CV 0236, 2023 WL 7281851, at *5 (N.D. Ill. Nov. 3, 2023) (citing to *Bonahoom v. Staples, Inc.*, 2021 WL 1020986, at *7 (N.D. Ill. Mar. 17, 2021) ("Bonahoom's allegations about the existence of an express warranty and the breach of that warranty are adequate for the same

28

reasons his ICFA allegations were adequate"); *Hayes*, 2021 WL 3207749, at *4 (breach of warranty claims based on the same conduct as an ICFA claim "rise and fall" together); and *Acosta v. Hopper (USA), Inc.*, 2023 WL 3072358, at *5 (N.D. Ill. Apr. 25, 2023) (plaintiff's breach of express warranty claim "arise[s] from the same allegations as her ICFA claim" and therefore "survive[s] alongside her ICFA claim.")

## V.     CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss the Second Amended Class Action Complaint in its entirety. Should the Court grant any part of the Motion, Plaintiff respectfully requests leave to file an amended complaint to cure any deficiencies in the SAC.

Dated: August 29, 2024                                                    Respectfully submitted,

**LEVIN SEDRAN & BERMAN LLP**

By: */s/ Charles E. Schaffer*
    Charles E. Schaffer, Esq. (*pro hac vice*)
    510 Walnut St., Ste. 500
    Philadelphia, PA 19106
    (215) 592-1500 (ofc)
    cschaffer@lfsblaw.com

**CUNEO GILBERT & LADUCA, LLP**

By: */s/ Charles J. LaDuca*
    Charles J. LaDuca, Esq. (*pro hac vice*)
    Brendan S. Thompson, Esq. (*pro hac vice*)
    Alexandra Warren, Esq. (*pro hac vice*)
    4725 Wisconsin Ave., NW, Ste. 200
    Washington, D.C. 20016
    (202) 789-3960 (ofc)
    charles@cuneolaw.com
    brendant@cuneolaw.com
    awarren@cuneolaw.com

**HART MCLAUGHLIN & ELDRIDGE**

By: */s/ Stewart M. Weltman*
    Steven A. Hart, Esq.
    Stewart M. Weltman, Esq.
    Sean O'Malley, Esq.
    One South Dearborn, Suite 1400
    Chicago, Illinois 60603
    (312) 955-0545 (ofc)
    shart@hmelegal.com
    sweltman@hmelegal.com
    somally@hmelegal.com

**AUDET & PARTNERS LLP**

By: */s/ Michael McShane*
    Michael McShane, Esq. (*pro hac vice*)
    711 Van Ness Ave., Ste. 500
    San Francisco, CA 94102
    (415) 568-2555 (ofc)
    mmcshane@audetlaw.com

*Attorneys for Plaintiffs*