IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM SPIVEY, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 24 C 781 |
| v. | ) ) | Judge Marvin E. Aspen |
| EVIG LLC, d/b/a BALANCE OF NATURE and DOUGLAS L. HOWARD, | ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION & ORDER**

Plaintiff William Spivey brings this four-count, putative class-action, second amended complaint ("complaint") against defendants Evig, LLC and Douglas Howard, the marketers of a line of dietary supplement products bearing the brand name "Balance of Nature." Count I alleges that defendants' product packaging and advertising contained deceptive content in violation of the Illinois Consumer Fraud Act ("ICFA"), 815 ICLS 502/1 et seq. Count II alleges that defendants were unjustly enriched by their violation of the ICFA. Counts III and IV allege that defendants breached express and implied warranties made via the representations on their product's packaging and advertising materials in violation of 810 ILCS 5/2-313. Defendants move to dismiss the second amended complaint (Doc. 41). For the reasons explained below, defendants' motion to dismiss is granted.

## **BACKGROUND**

This is a case about whether the marketing materials for a line of dietary supplement products were deceptive. Balance of Nature is a line of fruit and vegetable dietary supplement

1

products that have been marketed by defendants since at least 1997.[1] Balance of Nature consists of freeze-dried fruits and vegetables pulverized into a powder and put into a capsule. Plaintiff first purchased Balance of Nature in the spring of 2021. Before his first purchase of Balance of Nature, plaintiff had seen it advertised on television. The advertising led him to believe that taking Balance of Nature "would fill in the gaps in the nutrition he obtained from eating food, provide him with health benefits as well and revitalize/energize him." Plaintiff made his first purchase of Balance of Nature by calling the telephone number provided in the television advertisement and purchasing a four-month subscription of Balance of Nature products. According to defendant's records, the total cost of plaintiff's purchases of Balance of Nature products was $551.34. Plaintiff discontinued his purchase of Balance of Nature when he realized the products did not provide him with the benefits that he believed were represented to him. According to plaintiff, had he known about these misrepresentations, he would not have purchased Balance of Nature in the first place.

## LEGAL STANDARD

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss is meant to test the sufficiency of the complaint, not to decide the merits of the case. McReynolds v. Merrill Lynch & Co., Inc., 694 F.3d 873, 878 (7th Cir. 2012); Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). In evaluating a motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." Tamayo v. Blagojevich, 526 F.3d, 1074 at 1081 (7th Cir. 2008). Courts may grant motions to dismiss under Rule 12(b)(6) only if a complaint lacks

---

[1] Because this is a motion to dismiss, the court bases its recitation of the facts on plaintiff's complaint unless otherwise indicated.

sufficient facts "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Although a facially plausible complaint need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. These requirements ensure that the defendant receives "fair notice of what the ... claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (internal quotation marks and citation omitted).

Claims sounding in fraud, such as a claim alleging deceptive conduct in violation of the ICFA, must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). See Fed. R. Civ. P. 9(b); Benson v. Fannie May Confections Brands, Inc., 944 F.3d 639, 646 (7th Cir. 2019); Greenberger v. GEICO Gen. Ins. Co., 631 F.3d 392, 399 (7th Cir. 2011). As a practical matter, this means that a plaintiff "must identify the 'who, what when, where, and how' of the alleged fraud." Benson, 944 F.3d at 646 (quoting Vanzant v. Hill's Pet Nutrition, Inc., 934 F.3d 730, 738 (7th Cir. 2019)).

## DISCUSSION

### I. Mootness

Because mootness is a jurisdictional issue, the court addresses it at the outset. See Worldwide Street Preachers' Fellowship v. Peterson, 388 F.3d 555, 558 (7th Cir. 2004) (explaining that "[m]ootness, therefore, is always a threshold jurisdictional question that we must address even when it is not raised by the parties"). Defendants argue that the case is moot

3

because it issued plaintiff a refund check on February 28, 2024, in the amount $567.88, which represented a complete refund for all of plaintiff's purchases, including four not at issue in this lawsuit, plus interest. Plaintiff refused the check and returned it to defendants' counsel. According to defendants, the case is moot no matter what plaintiff did with the check because he had in his hands the complete relief that he sought in this court.

Plaintiff responds that he rejected defendants' offer to settle his individual monetary claim, and an unaccepted offer of judgment made in an effort to pay a putative class representative's monetary claims does not moot those claims.

The court agrees with plaintiff. The relevant Seventh Circuit precedent is clear: "We overrule Damasco, Thorogood, Rand, and similar decisions to the extent they hold that a defendant's offer of full compensation moots the litigation or otherwise ends the Article III case or controversy." Chapman v. First Index, Inc., 796 F.3d 783, 786087 (7th Cir. 2015). Defendants persist in citing Gates v. City of Chicago, 623 F.3d 389, 412-13 (7th Cir. 2010), which held that a claim for monetary relief in a putative class action was moot where the defendants sent the plaintiffs refund checks and "[c]ounsel for the plaintiffs returned the [defendant]'s checks." Defendants insist that Gates is "controlling authority." But Gates, a case from 2010, is among the "similar decisions," that was overruled by Chapman in 2015. Indeed, Gates is the case that Damasco, which was explicitly overruled in Chapman, cites for the proposition that, "a plaintiff cannot avoid mootness by moving for class certification after receiving an offer of full relief." Damasco v. Clearwire Corp., 662 F.3d 891, 895 (7th Cir. 2011).

Beyond persisting in relying on overruled precedent, defendants' other approach is to

4

attempt to distinguish the facts in this case from the line of recent Seventh Circuit precedent stacked against their position. The key distinction, according to defendants, is that the check "was not an offer: there was nothing conditional, and the money was tendered to [plaintiff] free and clear." The court doubts that there is a meaningful distinction between an offer for settlement and a tender in this context.[2] Nevertheless, even if the distinction was meaningful, the Seventh Circuit has already held that "[a] defendant's tender of full relief does not moot the litigation." Webster v. Bayview Loan Servicing, LLC, 618 Fed. Appx. 864, 866 (7th Cir. 2015).

The court finds that this litigation is not moot by virtue of the check that defendants sent to plaintiff, which he rejected and returned to counsel. Consequently, the court has jurisdiction and moves to the sufficiency of the complaint.

## II. The Illinois Consumer Fraud Act (Count I)

A deception claim under the ICFA consists of four elements: "(1) the defendants committed a deceptive act or practice; (2) the defendants intended for the plaintiff to rely on the deception; (3) the deception happened in the course of trade or commerce; and (4) the deception proximately caused the plaintiff's injury." Cocroft v. HSBC Banks USA, N.A., 796 F.3d 680, 687 (7th Cir. 2015) (quoting Connick v. Suzuki Motor Co., 675 N.E.2d 584, 593 (Ill. 1996)). In addition to these elements, "[w]here an ICFA claim rests on allegations of deceptive conduct, Rule 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud." O'Connor v. Ford Motor Co., 477 F. Supp. 3d 705, 718 (N.D. Ill. 2020). Defendants

---

[2] The court also doubts that defendants truly mean that the check sent to plaintiff was "nothing conditional, and the money was tendered to [plaintiff] free and clear." Defendants implicitly conditioned the check on plaintiff's acceptance of it as a refund for plaintiff's purchases. Money that is truly given without conditions, or "free and clear," is a unilateral gift. And although the court takes no issue with defendants generously providing a unilateral gift to plaintiff, the court fails to see how such a gift would have any more bearing on this litigation than if plaintiff happened to receive a gift from his family or friends; it has no relation to his injury.

5

correctly argue that deceptiveness is evaluated using a "reasonable consumer" standard, that is defendants' statements must be "likely to deceive reasonable consumers." Bell v. Publix Super Mkts., Inc., 982 F.3d 468, 474 (7th Cir. 2020). Plaintiff claims that the labels and advertising for Balance of Nature were deceptive. The court will first address the labeling claims and then move to the advertising claims.

### A. Labels

Count I alleges that the front and back labels on defendants' Balance of Nature products contain "misrepresentations, falsehoods and deceptions" in violation of the ICFA. Defendants argue that the front label claims are factually true claims, and thus plaintiff's ICFA claim rests on a mischaracterization of the content on the front label. As to the back label, defendants argue that the claim is preempted by Nutrition Labeling and Education Act ("NLEA") and the Dietary Supplement Health and Education Act ("DSHEA"). 21 U.S.C. §§ 343(r), 343-1(a). Additionally, defendants argue that plaintiff reads too much into the representations on the front and back labels, which would not deceive a reasonable consumer.

Plaintiff responds that the claims on the front label are misleading, deceptive, or false. Plaintiff's argument focuses on three representations on the front label: "Real Food—Real Science—Real Nutrition." Plaintiff argues that the "Real Food" is misleading and deceptive because it would lead consumers to believe that taking Balance of Nature at least provides a nutritionally meaningful substitute for eating real food such as a serving of fruits and vegetables. Plaintiff argues that "Real Nutrition" is misleading and deceptive because it "leads a reasonable consumer to believe that by taking Balance of Nature "they will obtain meaningful nutrition that will meaningfully supplement whatever shortfalls they may have in the daily intakes of fruits and vegetables and contribute to their overall health." Plaintiff argues that "Real Science" is false

6

and misleading because it would be understood by the reasonable consumer to mean that there are "peer-reviewed clinical studies performed on the Balance of Nature products proving that the Balance of Nature products provide the represented health and well-being and energy benefits Defendants claim that taking Balance of Nature provides."

Plaintiff argues that the back label, which lists the ingredients as consisting of blends such as "Maintain Blend," a "Protect or Fend Blend," and a "Repair Blend or Refresh Blend" reinforces the representations made on the front label. Plaintiff argues that these blend names reinforce the conclusions that that a reasonable consumer would understand from reading the front label.

The court agrees with defendants. Plaintiff's arguments hinge on his own unreasonable gloss on the labels. "[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." Bell v. Publix, 982 F.3d at 477.

Plaintiff glosses the "Real Food" and "Real Nutrition" as representations as to the quantity of food or nutritional content contained in the supplement. But these words simply do not represent a claim about quantity. As explained in a case cited by defendants, Matthews v. Polar Corp., 2023 WL 4534543, at *7 (N.D. Ill. March 22, 2023), "[t]here is a big difference between saying 'lemon' and saying 'this product contains X amount of lemon." A reasonable consumer would not confuse the two concepts. Similarly, in Chiapetta v. Kellog Sales Co., 2022 WL 602505, at *5 (N.D. Ill. March 1, 2022), this court once explained in a case about strawberry flavored Pop-Tarts that "[t]he front of the product packaging does not state or suggest anything about the amount of strawberries in the Product's filling or guarantee that the filling contains

7

only strawberries." Here, the front of the product packaging states that the product is made of real food which provides real nutrition. As plaintiff concedes, this is literally true: "Since the Balance of Nature products are purported to be freeze-dried and pulverized versions of various fruits and vegetables, the claim that they are 'real food' is literally true." SAC at ¶71. The label does not suggest that the product provides a certain amount of real food or real nutrition. Plaintiff has not plausibly alleged that a reasonable consumer would be deceived by reading the label in the way that plaintiff argues.

As for the "real science" representation, the court finds that plaintiff has similarly failed to plausibly allege that it would deceive a reasonable consumer. Plaintiff's gloss on the "Real Science" is that a reasonable consumer would expect it to mean that there are "peer-reviewed clinical studies" that show that "taking Balance of Nature fruits and veggies on a daily basis provides the represented health benefits implied if not expressly made on the labeling." Plaintiff's theory of why "real science" is deceptive is gloss layered on top of gloss: plaintiff argues that a reasonable consumer would understand "real science" to mean that there are scientific studies supporting the quantity conclusions discussed above. As discussed above, plaintiff implausibly reads in a quantity-based claim into defendants' "Real Food" and "Real Nutrition" representations. Because the court has already determined that a reasonable consumer would not read plaintiff's unreasonable quantity-based conclusions into "Real Food" and "Real Nutrition," a reasonable consumer also would not read "Real Science" as representing that a specific scientific process was used to validate those conclusions. Plaintiff has failed to plausibly allege that "Real Science" was "likely to deceive a reasonable consumer." Beardsall v. CVS Pharmacy, Inc., 953 F.3d 969, 972 (7th Cir. 2020).

Plaintiff's claims about the allegedly deceptive material on the back label fail for similar

8

reasons. In briefing, plaintiff argues that the "back of the labels purport to provide 'nutritional information' but in fact reinforce the misrepresented benefits of Balance of Nature." Once again, these misrepresented benefits that plaintiff references are the same ones he derives from "Real Food" and "Real Nutrition" on the front labels, which the court need not discuss again.

Plaintiff also argues that the names of the "blends" on the back labels--"Maintain Blend," a "Protect or Fend Blend," and a "Repair Blend or Refresh Blend"— "falsely represent that the products will maintain, protect and repair one's health." The court agrees with defendants that plaintiff is "reading far too much into the packaging." Gardner v. Ferrera Candy Co., 2023 WL 4535906, at *4 (N.D. Ill. Mar. 22, 2023). Additionally, plaintiff's interpretation of the back label once again reads in a quantity claim where there is none. Plaintiff alleges that:

> By calling the combination of freeze-dried/pulverized vegetables the "protect blend" or "fend blend", defendants falsely impart the message that taking Balance of Nature will provide some sort of protection for one's health, when, as seen above, there is so little nutrients in the veggie blend that taking it is meaningless

Plaintiff's issue is with the quantity of nutrition in Balance of Nature's product. As discussed above, "[a] statement about the presence of an ingredient is not a promise about the amount of the ingredient." Id. at *5. Plaintiff does not dispute that Balance of Nature contains the freeze-dried, pulverized fruits and vegetables that the label says it does, instead plaintiff's dispute is with the quantity of nutrition that can be derived from a capsule sized serving of such ingredients. Plaintiff has failed to plausibly allege that a reasonable consumer would be deceived by the representations on the back label of Balance of Nature.[3]

---

[3] Because the court dismissed plaintiff's back-label ICFA claims due to its failure to plausible allege that it would be likely to deceive a reasonable consumer, the court does not reach defendant's preemption-based arguments.

9

B. Advertising

In addition to the labeling, plaintiff also claims that defendant's advertising was deceptive. Defendants argue that plaintiff's advertising theory fails to state a claim under the ICFA for two reasons. First, plaintiff does not allege to have seen any specific advertisement and thus fails to fulfill the proximate cause requirement of the ICFA. See De Bouse v. Bayer, 922 N.E.2d 309, 313 (Ill. 2009) (explaining that the ICFA "imposes an obligation on the plaintiff to prove the deceptive act proximately caused any damages"). Second, plaintiff does not identify any specific deceptive statement contained in any of defendant's advertisements and thus fails to meet the first element of an ICFA claim and the requirements of Rule 9(b).

Plaintiff responds that he sufficiently identified the advertisements that were running around the time that plaintiff alleges to have seen them, and that "[t]he sum and substance of these ads communicated one unitary message— that by taking Balance of Nature Fruits and Vegetables a consumer will feel more energetic and healthier." Plaintiff also argues that he has sufficiently alleged that "who, what, when, and where" of defendants' fraud, and thus adequately pleads facts sufficient to raise a right to relief above a speculative level and to meet the requirements of Rule 9(b). See Camasta v. Jos. A. Bank Clothiers, Inc., 761 F.3d 732 (7th Cir. 2014) (explaining that "[w]hile the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the pleading ordinarily requires describing the who, what, when, where, and how of the fraud").

The court finds that plaintiff has failed to state a claim based on Balance of Nature's advertising because plaintiff has failed to identify any statements that would likely deceive reasonable consumers. This failure is a consequence of the fact that plaintiff does not allege that

10

he saw any specific advertisement. As a result, the complaint focuses only on the "overarching message" rather than the specific content of any advertisement. A footnote in plaintiff's complaint illustrates the issue:

> Whether and which ones Plaintiff can recall that he saw or relied upon will be the subject of further discovery, including Defendants production all of its advertising and marketing materials during the class period. But what is clear is that Plaintiff was exposed to and received the same overarching message imparted by these ads, defendants' web site and Defendants' labeling – that the Balance of Nature products would fill in nutritional gaps, help his health and increase his energy.

Under the reasonable consumer standard, the court asks whether there is "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." Bell v. Publix, 982 F.3d at 474. But since plaintiff cannot identify an advertisement that he saw, the court cannot begin to evaluate whether a reasonable consumer could be misled by it. To satisfy the first element of an ICFA claim, a plaintiff "must plausibly allege that the statement was 'likely to deceive a reasonable consumer.'" Castedana v. Amazon, Inc., 679 F.Supp.3d 739, 748 (N.D. Ill. 2023). Here, the complaint leaves the reader in search of a statement. Plaintiff consistently alleges that he was misled by the "overarching" theme or message of the advertisement, but such an overarching theme is not a statement made by defendants.

To be clear, plaintiff's complaint contains examples of statements from specific advertisements. But the complaint never alleges that plaintiff saw any of these advertisements or relied upon these statements. Instead, the complaint alleges: "Whether Plaintiff or the class members saw all of the above, just one or a few, each of them on their own or in combination with others imparted the same message – that the Balance of Nature products provide meaningful nutrition for one's better health and energy." Thus, the statements cited in the complaint are

11

merely illustrative of the type of statements that plaintiff claims to have seen but never identifies.[4] Because plaintiff fails to plausibly allege that any statement made by defendants was "likely to deceive a reasonable consumer," he fails to state a claim under the ICFA. Castedana, 679 F.Supp.3d at 748.

### III. Unjust Enrichment (Count II)

Defendants move to dismiss Count II of the complaint, which alleges that defendants have reaped unjust revenue and profit based on its deceptive advertising and labeling of Balance of Nature products. Plaintiffs argue that under Illinois law, where, as here, unjust enrichment claims are predicated on the same conduct as alleged under the ICFA, "the claims rise and fall together." Thomas v. Walmart Inc., No. 23 CV 5315, 2024 WL 1050179, at *10 (N.D. Ill. Mar. 11, 2024). See also Cleary v. Philip Morris Inc., 656 F.3d 511, 517 (7th Cir. 2011) (explaining that "[w]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well). Since the court has dismissed plaintiff's claim under the ICFA, it also dismisses plaintiff's unjust enrichment claim. The claims fall together.

### IV. Breach of Express Warranty (Count III)

Defendants move to dismiss Count III of the complaint, which alleges that defendants breached an express warranty to plaintiff. Defendants seek to dismiss Count III because, among

---

[4] While the court's analysis is focused on plaintiff's failure to allege a deceptive statement under the reasonable consumer standard, the failure to identify specific statements also falls short of the requirement Rule 9(b). "Rule 9(b) does not require plaintiffs to give some examples of fraud to give the defendants a flavor of what the case is about. Rule 9(b) requires a plaintiff to specifically identify the alleged fraudulent or deceptive statements that are the basis of the instant action." Cosmetique, Inc. v. ValueClick, Inc., 753 F.Supp.2d 716, 721 (N.D. Ill. 2010).

other reasons, plaintiff fails to allege a specific warranty that was breached. Defendants argue that plaintiff never specifies the alleged warranty's terms or identified a particular statement that created a warranty.

Plaintiff responds that product labels and advertisements can create an express warranty. Plaintiff references 810 Ill. Comp. Stat. 5/2-313(1)(b), which states that "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Plaintiff argues that the advertising and labeling at issue here "promise that by taking the Balance of Nature products one will obtain meaningful nutrition that contributes to one's health and well-being as well as providing a boost in energy."

The court agrees with defendants. Generally, to a state a claim for breach of express warranty under Illinois law, "a plaintiff must state the terms of the warranty alleged to be breached or attach it to the complaint." Rudy v. Family Dollar Stores, Inc., 583 F.Supp.3d 1149, 1162 (N.D. Ill. 2022) (quoting Gubala v. CVS Pharmacy, Inc., No. 14 C 9039, 2015 WL 3777627, at *7 (N.D. Ill. June 16, 2015)). This claim fails for the same reason his ICFA claim fails. To establish the terms of the alleged warranty, plaintiff relies on his interpretation of the overarching theme of Balance of Nature advertising and labeling rather than any statements actually made by defendants. Among other things, plaintiff never points to a statement made by defendants that makes the promise that he alleges. Thus, plaintiff does not plausibly allege the existence of an express warranty that was breached. Consequently, his claim for a breach of an express warranty is dismissed. See Karlinski v. Costco Wholesale Corporation, 616 F.Supp.3d 753, 765 (N.D. Ill. 2022) (explaining that "because Plaintiff's theory of deception fails, his theories of breach of express and implied warranty…also fail").

V.  **Breach of Implied Warranty (Count IV)**

Defendants move to dismiss Count IV, which alleges that defendants breached an implied warranty to plaintiff.  Plaintiff argues that "[w]hen an implied warranty of merchantability cause of action is based solely on whether the product in dispute conforms to the promises or affirmations of fact on the packaging of the product, the implied warranty of merchantability claim rises and falls with express warranty claims brought for the same product."  Hadley v. Kellogg Sales Co., 273 F. Supp. 3d 1052, 1096 (N.D. Cal. 2017).  Since the court has concluded that the express warranty claim fails, the implied warranty claim fails as well.  The claims fall together.

## **CONCLUSION**

For the above reasons, the court grants defendants' motion to dismiss.  (Doc. 44).  The second amended complaint (Doc. 41) is dismissed with prejudice.

Dated:  June 9, 2025

_____
Marvin E. Aspen
U.S. District Judge